IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CROWN PONTIAC, INC., d/b/a** | ) | |
| **Crown Pontiac Nissan, Crown Pontiac-Nissan,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| vs. | ) | 02-C-1001-S |
| | ) | |
| **THOMAS BALLOCK,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Defendant Thomas Ballock seeks damages for having been preliminarily enjoined from using a website to publicize his dispute with the Plaintiff Crown Pontiac, Inc., d/b/a Crown Pontiac Nissan, Crown Pontiac-Nissan ("Crown"). Because the Court finds and concludes that the preliminary injunction was wrongfully issued and its issuance caused Ballock to suffer damages, he is entitled to $6,776.45 in damages.

I. Findings of Fact

On January 31, 2002, Ballock and his wife, Patricia Ballock, negotiated with Crown for the purchase of a 2002 Maxima. Unable to accommodate the Ballock's desire for a vehicle with a factory-installed sunroof, Crown offered, and the Ballocks accepted, a Maxima with a dealer-installed sunroof. The sales contract contained an arbitration clause. Thereafter, the Ballocks became displeased with the sunroof and learned that the aftermarket sunroof partially voided the factory warranty on the vehicle. They then sought to rescind the sale and to revoke their purchase



of the vehicle. Crown resisted. Arbitration proceedings were thereafter commenced as required by the purchase contract. *See* Second Decl. of Thomas Ballock.

On February 25, 2002, Thomas Ballock, displeased with the pace of arbitration, obtained the domain name "www.crownpontiacnissan.com." Thereafter, he began adding content to the website.[1] Second Ballock Decl., ¶ 4. The website consists of two sections. *Id.* at ¶ 6. The first part, entitled "My Dreadful Experience," describes the unpleasant experience of the Ballocks as customers of Crown. *Id.* Ballock regularly updated the content of this section of the website to summarize the arbitration proceedings surrounding the purchase of the vehicle and, subsequently, to track developments in the lawsuit. *Id.* Additionally, Ballock posted correspondence from Crown's lawyer, a copy of the Complaint filed in this case, and Ballock's comments regarding those documents. *Id.* The second component of Ballock's website, entitled "Arbitration: Bad for Consumers," is devoted to discussing his perceived pitfalls of arbitration for consumers, and includes a number of links to arbitration related articles and commentary. *Id.*

Ballock's stated purpose in creating and maintaining the website was to publicize what he believed to be the negative treatment he and his wife received by Crown associated with the purchase of their vehicle. *Id.* at ¶ 5. Additionally, Ballock sought to provide the public with information regarding Crown's business practices, product warranty issues unique to aftermarket sunroofs, arbitration as it relates to consumer purchases, and Ballock's communications with Crown's attorneys. *Id.*

Ballock made a clear effort to disassociate his website from the Crown website. Second

---

[1] Ballock's website was located http://www.crownpontiacnissan.com (last visited Mar. 5, 2003).

Ballock Decl., ¶ 7. Appearing in bold type at the top of the website is the following statement: **"This website is not in any way affiliated with Crown Pontiac-Nissan, Crown Nissan or with any automobile dealer or manufacturer."** *Id.* at ¶ 7. However, also on the top of the Ballock web page is the statement: **"I shall not recommend doing business with Crown-Pontiac Nissan to anybody – Thomas Ballock."** *Id.*

Crown filed this lawsuit against Ballock on April 23, 2002, seeking injunctive relief and damages. On May 8, 2002, at Crown's urging, and after notice and a hearing, the Court entered a Preliminary Injunction effective only upon Crown's posting of a bond in the amount of Ten Thousand Dollars ($10,000.00). The Preliminary Injunction restrained Ballock and his agents from, "acquiring, utilizing or operating any website using the trade name Crown Pontiac-Nissan or any confusing variation thereof, in text or domain name(s) intended to, or having the effect of, diverting traffic from Crown Pontiac, Inc.'s web sites, including without limitation any site found at the URL *http://www.crownpontiacnissan.com*." *Id.* at ¶ 16. The Injunction did not, however, preclude Ballock from publicizing his disputes with, and criticism of Crown, "so long as he does not utilize [Crown]'s mark or any derivation of [Crown]'s domain name to divert Internet traffic from [Crown]'s website." Second Ballock Decl., ¶ 17.

Because of his fear that *any* reference to Crown in his website would violate the Preliminary Injunction, the *pro se* Ballock removed his www.crownpontiacnissan.com site from the Internet and did not thereafter refer to Crown by any name on the Internet. *Id.* at ¶ 17. The fear was justified in light of the ongoing threats by Crown's attorney to have Ballock "jailed and/or fined for contempt of Court..." for violation of the injunction. *See,* Ex. 2 to Def.'s Mot. for Award from Injunc. Bond, Letter from Galese to Ballock of 5/13/02; Ex. 3 to Def.'s Mot. for Award from Injunc. Bond, Letter

from Galese to Ballock of 5/15/02.

The Preliminary Injunction was lifted in its entirety by this Court's Order of July 16, 2002, following briefs and a hearing on Ballock's Motion to Dissolve the Preliminary Injunction. By this time, Ballock had secured highly competent representation. There was no evidence that Ballock was motivated by profit, or any other commercial motive in creating his website. Moreover, there was no evidence that Crown suffered damages as a result of the website. Thus, the Preliminary Injunction never should have been issued.

On September 4, 2002, the arbitrator ruled in favor of the Ballocks on all disputed issues. Based on the arbitrator's decision: (1) the Ballocks were permitted to revoke their purchase of the vehicle; (2) Crown was required to reimburse the Ballocks for all the car payments they had made; (3) Crown was required to pay off the vehicle loan in its entirety; and (4) Crown was required to pay the Ballocks $7,500 for their expenses and time.

Pursuant to a Settlement Agreement between the parties, this case was dismissed, with prejudice, on February 13, 2003. Ballock suffered $766.45 in out-of-pocket costs to defend against the Preliminary Injunction. He suffered $4,000 in mental anguish damages. Finally, the deprivation of his First Amendment rights flowing from the wrongful issuance of the Preliminary Injunction is valued at $2,000.00.

## II. Conclusion

Defendant Thomas Ballock has carried his burden of proof of damages sustained as a direct result of the wrongful issuance of the Preliminary Injunction in this case. Plaintiff Crown Pontiac Nissan's bond was posted to compensate him for those damages.

By separate order, the Clerk of the Court will be directed to pay over to the Defendant the sum of $6,766.45 as damages from the Injunction Bond, and to pay over the remaining balance to the Plaintiff.

Done this \_\_\_\_22nd\_\_\_\_ day of September, 2003.

_____
Chief United States District Judge
U.W. Clemon